# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 2:18cr00050-1 |
| | ) | **Electronic Filing** |
| **MICHAEL COX** | ) | |

## TENTATIVE FINDINGS AND RULINGS

AND NOW, this 12th day of April, 2021, upon due consideration of Michael Cox's ("defendant") objections to the presentence investigation report and the submission of the government filed in response thereto, the court makes the following tentative findings and rulings:

1) Defendant has an initial base offense level of 26 pursuant to U.S.S.G. § 2M5.2 because the offense involved an agreement to export military-grade rifle night sighting scopes that were defined and controlled by the International Traffic in Arms Regulations and were of the kind identified in the United States Munitions List.

Consequently, defendant has an adjusted base offense level of 23, which when combined with a criminal history category of III produces a guidelines sentencing range of 57 to 60 months.

Defendant's contention that the reduced base offense level of 14 should apply because the offense did not involve the actual exportation of any actual firearms or ammunition is inapposite. Contrary to defendant's position, application of § 2M5.2 as written does not "render the less serious arms export provision in the Guidelines meaningless." Defendant's Objections (Doc. 125) at 2, ¶ 3.

Section 2M5.2 governs the "Exportation of Arms, Munitions, or Military Equipment or Services Without Required Validated Export License" and provides:

(a) Base Offense Level:
(1) 26, except as provided in subdivision (2) below;

(2) 14, if the offense involved only (A) non-fully automatic small arms (rifles, handguns, or shotguns), and the number of weapons did not exceed two, (B) ammunition for non-fully automatic small arms, and the number of rounds did not exceed 500, or (C) both. U.S.S.G. § 2M5.2.

Section 2M5.2 has been amended 3 times. Once to eliminate the requirement of "sophisticated weaponry"; once to better distinguish between "the more and less serious forms of offense conduct covered;" and once to respond to "a statutory provision expressing a sense of Congress . . . that the guideline penalties were inadequate for certain offenses involving the importation and exportation of nuclear, chemical, and biological weapons." United States v. Oldani, 2009 WL 1770116, *5 (S.D. W.V. June 16, 2009) (citing App. C amend. 337 (1990) and amend. 633 (2001)). The two most recent amendments narrowed the conduct triggering the reduced base offense level at subsection 2 and increased the base offense level at subsection 1.

The Congressional statement giving rise to the most recent increase "provided little guidance but plenty of discretion to the sentencing commission to fashion the increased penalties. Rather than adopting some specific offense characteristics (such as, the number of articles exported, their technical sophistication, the capability to cause harm, etc.), the commission simply raised the base offense [in subsection 1 by] four levels." Id.

Against this backdrop, Application Note 1 provides further insight into the scope of conduct within the ambit of this section and the court's consideration of it:

1. Under 22 U.S.C. § 2778, the President is authorized, through a licensing system administered by the Department of State, to control exports of defense articles and defense services that he deems critical to a security or foreign policy interest of the United States. The items subject to control constitute the United States Munitions List, which is set out in 22 C.F.R. Part 121.1. Included in this list are such things as military aircraft, helicopters, artillery, shells, missiles, rockets, bombs, vessels of war, explosives, military and space electronics, and certain firearms.
The base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States. In the unusual case where the offense conduct posed no such risk, a downward departure may be

2

warranted.  In the case of a violation during time of war or armed conflict, an upward departure may be warranted.  See Chapter Five, Part K (Departures).

Application Note 1 to U.S.S.G. § 2M5.2.

    The courts that have considered challenges to the divisions drawn in § 2M5.2 have adhered to a "plain text" analysis.  In United States v. Carper, 659 F.3d 923 (9th Cir. 2011), the court considered the defendant's contention that "exporting PVS–14 Gen 3 night-vision devices" should have garnered the application of the 14 point base offense level under subsection 2, instead of the 26 point level the district court applied pursuant to subsection 1.  The court rejected that contention, holding that "PVS–14 devices are not 'non-fully automatic small arms' within the plain meaning of U.S. Sentencing Guidelines Manual § 2M5.2(a)(2)."  Id. at 925.  In so holding, the court reasoned the night scopes were not similar to the specific types of firearms in subsection 1 and the text of the subsection is focused only on firearms.  Id.

    Moreover, in applying § 2M5.2 the courts consistently have either explicitly or implicitly followed the "plain text" approach.  See United States v. Mathers, 528 F. App'x 771, 772 (9th Cir. 2013) (district court properly assigned a base offense level of 26 to "a conspiracy to export military-grade night–vision goggles because the military grade scopes were not within the definition of 'non-fully automatic small arms,' and therefore [did] not qualify for a base offense level of fourteen."); United States v. Nwankwoala, 478 F. App'x 781, 783-84 (4th Cir. 2012) (defendant's exporting 6 handguns and 1,180 rounds of ammunition properly was treated as falling under subsection 1, because, notwithstanding the defendant's contention that the failure to treat ammunition differently from "tanks, helicopters and vessels of war" leads to absurd and unreasonable outcomes, the defendant's offense conduct did not fall within the plain language of subsection 2 and the defendant "'self-serving' opinion regarding

'the seriousness' of his crime [was] of absolutely no import because it is irrelevant under the plain language of [§ 2M5.2].") (quoting United States v. Reyes, 270 F.3d 1158, 1171 (7th Cir. 2001) (rejecting a similar argument). Even the district court in Oldani, which defendant relies on, applied a plain text approach to the defendant's exportation of night vision scopes and concluded that a base offense level of 26 was proper. See Oldani, 2009 WL 1770116 at *5 ("Because the exception described in base offense level 14 only applies to non-fully automatic small arms, the base offense level of 26 within § 2M5.2 applies whether the items exported are night-vision optics, like those at issue here, or nuclear weapons.").

Indeed, the circuit courts have been uniform in eschewing an expansive approach to the application of the 14 point base offense level in subsection 2. See United States v. Sero, 520 F.3d 187, 190 (2d Cir. 2008) (*per curiam*) ("Because the language of [§ 2M5.2] is clear, our inquiry ends. We find that the guideline does not permit finding an exception for [exports] including ammunition, no matter how small the quantity."); United States v. Muthana, 60 F.3d 1217, 1223–24 (7th Cir. 1995) (holding the higher, subdivision (1) offense level applies to violations of the AECA involving ammunition even if the offense involves only ammunition); United States v. Galvan–Revuelta, 958 F.2d 66, 68–69 (5th Cir. 1992) (holding § 2M5.2 applies to offenses involving unlawful export of ammunition under the AECA, but not discussing which subdivision applies). Our court of appeals likewise has rejected such an approach. United States v. Tsia, 954 F.2d 155, 163-64 (3d Cir. 1992) (rejecting argument under a previous version of § 2M5.2 that exporting optical receivers and infra-red domes should have been treated as warranting a base offense level of 14 under subsection 2 pursuant to a "sensible" reading of the Guidelines section).

Here, the record demonstrates that defendant's offense conduct falls under subsection 1 because the offense involved an agreement to export military-grade rifle night sighting scopes

that were defined and controlled by the International Traffic in Arms Regulations and were of the kind identified in the United States Munitions List.  As such, defendant's conduct does not fall within the exception for small firearms and related ammunition established by subsection 2.[1]  Consequently, defendant's base offense level properly is set at 26 by subsection 1.

Of course, the above does not foreclose whether a variance is warranted, and, if so, the degree to which the court should vary in arriving at an appropriate sentence.  Such matters properly are considered at the time of sentencing.

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:   Charles A. Eberle, AUSA
      Andrew Lipson, AFPD

*(Via CM/ECF Electronic Mail)*

---

[1]  As note by the government, defendant's offense conduct also involved an agreement to acquire and export gun parts and receivers in numbers far in excess of the numerical limitation of two firearms in subsection 2.  This aspect of the offense supplies an alternative basis for application of subsection 1.  See United States v. Gong Kim, 467 F. App'x 548, 548 (9th Cir. 2012) (exporting gun parts was outside the exception for "non-fully automatic small arms" in subsection 2 and therefore the defendant's base offense level properly had been set under subsection 1); cf. United States v. Nissen, 928 F.2d 690, 694 (5th Cir. 1991) (treating the exportation of gun parts as equivalent to the number of firearms that can be serviced with the parts).